Robert P. Goe - State Bar No. 137019
Charity J. Manee – State Bar No. 286481
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Suite 210, Building D
Irvine, CA 92614
rgoe@goeforlaw.com
cmanee@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for: United Fiber Comm., Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br> UNITED FIBER COMM., INC.,<br><br>        Debtor and Debtor in<br>        Possession | Case No. 6:24-bk-16470-SY<br><br>Chapter 11<br><br>Adv. Case No. 6:25-ap- |
| UNITED FIBER COMM., INC,<br><br>        Plaintiff,<br><br>    vs.<br><br>RICHARD KEYNER, an individual, and<br>DOES 1 - 10<br><br>        Defendant(s). | **COMPLAINT FOR MANDATORY SUBORDINATION PURSUANT TO 11 U.S.C. § 510(b)**<br><br>Hearing:<br>Date:<br>Time:<br>Courtroom:  302<br>          United States Bankruptcy Court<br>          3420 Twelfth Street<br>          Riverside, CA 92501 |

United Fiber Comm., Inc., Debtor and Debtor in Possession and Plaintiff in this adversary

proceeding ("Debtor" or "Plaintiff"), respectfully alleges as follows:

## I.    SUBJECT MATTER JURISDICTION AND VENUE

1.    This adversary proceeding arises in and relates to the Debtor's pending chapter 11

bankruptcy case entitled *In re United Fiber Comm, Inc.*, Case No. 6:24-bk-16470-SY

("Bankruptcy Case").

2.    On October 29, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

3.    This Court has jurisdiction to adjudicate the issues raised in this adversary proceeding under 28 U.S.C. § 1334 as the claim in this adversary proceeding arises in and relates to the Bankruptcy Case.

4.    This action is a core proceeding under 28 U.S.C. § 157(b). Pursuant to Federal Rule Bankruptcy Procedure 7008, Plaintiff consents to the Bankruptcy Court entering final a judgment and/or order.

5.    This adversary proceeding is a civil proceeding arising in and related to the Bankruptcy Case, and such case is pending before this Court. Accordingly, venue in this Court is proper under 28 U.S.C. § 1409(a).

## THE PARTIES

6.    Plaintiff is a California corporation and files this complaint in its capacity as Debtor in Possession in the Bankruptcy Case.

7.    Defendant, Richard Wayne Keyner ("Defendant" or "Mr. Keyner"), is an individual who resides in California.

## GENERAL ALLEGATIONS

8.    Defendant is an alleged creditor of the Plaintiff who sued the Plaintiff in the California Superior Court for the County of Riverside in March of 2023, commencing the action entitled *Keyner v. United Fiber Comm., Inc.*, Case No. CVRI2301512 ("State Action").

9.    In the State Action, seven causes of action were pled by Mr. Keyner against the Debtor. The gravamen of each of these is a breach of contract claim (not based on any writing) by which Defendant claims he was supposed to receive 45% of the outstanding shares of the Debtor, and are summarized as follows:

    a.  1st Claim: breach of oral contract against all defendants for failure to perform an alleged oral/implied contract for the delivery of 45% of the existing shares in the Debtor to Mr. Keyner;

    b.  2nd Claim: breach of an implied contract against all defendants (including the Debtor)

for failure to perform an alleged oral/implied contract for the delivery of 45% of the existing shares in the Debtor to Mr. Keyner;

c. 3rd Claim: violation of the covenant of good faith and fair dealing against all defendants for failure to perform an alleged oral/implied contract for the delivery of 45% of the existing shares in the Debtor to Mr. Keyner;

d. 4th Claim: for unjust enrichment against all defendants for failure to perform an alleged oral/implied contract for the delivery of 45% of the existing shares in the Debtor to Mr. Keyner;

e. 5th Claim: promissory estoppel against all defendants for failure to deliver 45% of the existing shares in the Debtor to Mr. Keyner;

f. 6th Claim: promissory fraud against all defendants for failure to deliver 45% of the existing shares in the Debtor to Mr. Keyner; and

g. 7th Claim: negligent misrepresentation against all defendants for failure to deliver 45% of the existing shares in the Debtor to Mr. Keyner.

10. Paragraph 14 of Mr. Keyner's complaint alleges the Debtor had 1000 shares, all of which were issued/outstanding, and that pursuant to an alleged oral agreement, he was entitled to 450 of said outstanding shares.

11. Plaintiff counterclaimed against the Defendant in the State Action.

12. After the Petition Date, on January 17, 2025, Defendant filed a proof of claim in the Bankruptcy Case ("Keyner Claim"). A true and correct copy of the Keyner Claim is attached hereto and incorporated herein as **Exhibit "1"**.

13. According to paragraph 8 of the Keyner Claim, the Keyner Claim is based on the same claims asserted by Mr. Keyner in the State Action and Mr. Keyner's complaint filed in the State Action is appended to the Keyner Claim.

14. The Keyner Claim seeks payment of $14,153,858 from Debtor's estate.

15. Section 510(b) of the Bankruptcy Code provides,
For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security,

GOE FORSYTHE & HODGES LLP
17701 Cowan, Suite 210
Irvine, CA 92614

1    except that if such security is common stock, such claim has the same priority as common
stock.

2    16.    The Ninth Circuit has adopted a broad interpretation of what constitutes "a claim

3    arising from the purchase or sale of a security."

4    17.    Even if a claim is based on conduct occurring after the transaction and/or and

5    equity claim is reduced to judgment, it is still subject to subordination under Section 510(b).

6    18.    As recently affirmed by the Ninth Circuit Bankruptcy Appellate Panel,

7
8        The Ninth Circuit broadly interprets the scope of § 510(b). *See Liquidating Tr. Comm.
         of the Del Biaggio Liquidating Tr. v. Freeman (In re Del Biaggio),* 834 F.3d 1003,
9        1009 (9th Cir. 2016); *Pensco Tr. Co. v. Tristar Esperanza Props., LLC (In re Tristar
         Esperanza Props., LLC)*, 782 F.3d 492, 495 (9th Cir. 2015) ("Tristar"). Thus, the Ninth
         Circuit has held that a claim "arises from" the purchase or sale of securities whenever it
10       shares a "nexus or causal relationship"" with the purchase or sale of securities. *In re
         Del Biaggio*, 834 F.3d at 1009 (*citing In re Am. Wagering, Inc*., 493 F.3d at 1072).
11

12    *Kurtin v. Ehrenberg (In re Elieff)*, 637 B.R. 612, 622, (BAP 9th Cir. 2022) aff'd 2023 U.S. App.

13    LEXIS 4487 (Unpublished) (9th Cir. 2023).

14    19.    Section 510(b) is referred to as "mandatory subordination", as claims within its

15    reach are subordinated automatically by operation of law.

16                            **CLAIM FOR RELIEF**

17    **(Mandatory Subordination of Claims and Liens Pursuant to 11 U.S.C. § 510(b))**

18    20.    Plaintiff hereby restates and realleges the foregoing allegations in paragraphs 1

19    through 19 above in support of this claim as if set forth here in full.

20    21.    On its face, the Keyner Claim, and all sums allegedly due thereunder, is a claim

21    arising from the rescission of a purchase or sale of a security of the Debtor, or for damages arising

22    from the purchase or sale of such a security.

23    22.    Pursuant to 11 U.S.C. § 510(b) the Keyner Claim and all payment rights associated

24    therewith must be subordinated to all claims against Debtor's estate.

25    \\\

26
27
28

1

## PRAYER FOR RELIEF

2      WHEREFORE, on its claim for relief, Plaintiff prays for entry of a judgment subordinating

3    the Keyner Claim below all allowed claims against Plaintiff's bankruptcy estate.

4

Dated: June 5, 2025                                    Respectfully submitted by

5

6                                                                **GOE FORSYTHE & HODGES LLP**

7

By: /s/ *Robert P. Goe*

8                                                                    Robert P. Goe

Charity J. Manee

9                                                                    Attorneys for Plaintiff United Fiber

Comm., Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>United Fiber Comm., Inc.</td></tr>
<tr><td>Debtor 2<br/>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Central District of California<br/>(State)</td></tr>
<tr><td>Case number</td><td>6:24-bk-16470-SY</td></tr>
</table>

**Official Form 410**

# Proof of Claim

12/24

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Richard Wayne Keyner
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Matthew D. Resnik, RHM LAW LLP
Name

17609 Ventura Blvd., Suite 314
Number     Street

Encino,  CA 91316
City           State           ZIP Code

Contact phone   (818) 285-0100

Contact email _____

**Where should payments to the creditor be sent? (if different)**

Rick Keyner
Name

15150 Capello Drive
Number     Street

Perris               CA          92570
City           State           ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____/_____/_____
                                                                                    MM   / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____14,153,858.00__ . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

SEE ATTACHED BREAKDOWN and STATE COURT COMPLAINT

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | | Amount entitled to priority |
|---|---|---|
| | ☐ No | |
| | ☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/16/2025
                    MM / DD / YYYY

/s/ Matthew D. Resnik
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name          Matthew D. Resnik
              First name          Middle name          Last name

Title         Attorney

Company       RHM LAW LLP
              Identify the corporate servicer as the company if the authorized agent is a servicer.

Address       17609 Ventura Blvd., Suite 314
              Number    Street
              Encino, CA 91316
              City                State    ZIP Code

Contact phone  (818) 285-0100          Email  matthew@rhmfirm.com

---

# EXHIBIT A

# BREAKDOWN OF ESTIMATED AMOUNTS OWED

SHARE VALUATION- $9,000,000 in share valuation based on 45% ownership and a 10% penalty= $9,900,000.

NEW CONTRACT DAMAGE- $4,000,000

UNPAID WAGES- $253,858- YEAR TO DATE FROM 2021 THRU 2024*

*UNPAID BONUS PAY- BASED ON $19M INVOICED IN 2022 AND UNKNOWN AMOUNT IN 2023. BONUS PAY WAS TO BE PAID OUT EQUALLY BETWEEN CEO &  PRESIDENT- PENDING VERIFICATION OF WHAT RAY MARTINEZ PAID TO HIMSELF SINCE TERMINATION OF RICK KEYNER IN OCTOBER OF 2022.

**TOTAL CLAIM (MINUS BONUS PAY)  =  $14,153,858**

# EXHIBIT B

Electronically Filed Superior Court of California County of Riverside on 03/24/2023 03:26 PM
Case Number CVRI2301512 0000053136877 - Marita C. Ford, Interim Executive Officer/Clerk of the Court By Olga Ramirez-Chavez, Clerk

1  Nima Nami (SBN 183042)
   NAMI LAW FIRM, P.C.
2  3 Hutton Centre Drive
   9th Floor
3  Santa Ana, CA 92707
   nima@namilaw.com
4  Tel: (949) 610-8535

5  Attorney for Plaintiff RICK KEYNER

6

7

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA
              COUNTY OF RIVERSIDE

9

10

11 | RICHARD WAYNE KENYER, an individual,   | Case No.  CVRI2301512

12 |                           Plaintiff,      | **COMPLAINT FOR:**

13 |       v.                                  | **(1) BREACH OF ORAL CONTRACT**
                                               | **(2) BREACH OF IMPLIED**
14 | UNITED FIBER COMM., INC., a California     |     **CONTRACT**
   | corporation; RAYMOND MANUEL              | **(3) BREACH OF IMPLIED**
15 | MARTINEZ, an individual; and DOES 1       |     **COVENANT OF GOOD FAITH**
   | through 10, inclusive,                    |     **AND FAIR DEALING**
16 |                                          | **(4) UNJUST ENRICHMENT**
   |                           Defendants.     | **(5) PROMISSORY ESTOPPEL**
17 |                                          | **(6) FRUAD**
   |                                          | **(7) NEGLIGENT**
18 |                                          |     **MISREPRESENTATION**

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR MONETARY DAMAGES                     1

1   Plaintiff, RICHARD WAYNE KEYNER, complains of defendants as follows:

2   **THE PARTIES**

3   1.   Plaintiff RICHARD WAYNE KEYNER ("PLAINTIFF" or "KEYNER") is an

4   individual resident of Riverside County, California.

5   2.   Defendant UNITED FIBER COMM., INC. ("DEFENDANT" or "UNITED") is a

6   corporation formed under California law, with its registered place of business located at 4280

7   Latham Street, Suite G, Riverside, California 92501. Defendant is a licensed general engineering

8   contractor (Contractor State License Board No. 988025). UNITED provides construction and

9   engineering contract services to telecommunications providers throughout California.

10   3.   Defendant   RAYMOND   MANUEL   MARTINEZ   ("DEFENANT"   or

11   "MARTINEZ") is an individual resident of Los Angeles County, California, and serves as the

12   chief executive officer, chief financial officer, secretary, and director of UNITED.

13   4.   PLAINTIFF does not know the true names and capacities of defendants named as

14   DOES 1 through 10, inclusive, and sues them by fictitious names. PLAINTIFF is informed and

15   believes, and on that basis alleges, that each DOE defendant is responsible in some manner for the

16   acts and omissions alleged herein, and for PLAINTIFF's damages. PLAINTIFF will later amend

17   this Complaint to allege their true names, capacities and relationships when they are known.

18   5.   PLAINTIFF is informed and believes, and on that basis alleges, that at all times

19   herein mentioned, each defendant acted as an agent of the others in doing the things herein

20   alleged, and acted within the course and scope of that agency and with the permission and consent

21   of one another.

22   **JURISDICTION AND VENUE**

23   6.   This action falls within the unlimited civil jurisdiction of this Court because the

24   amount in controversy exceeds $25,000 exclusive of interest, costs, and attorneys' fees.

25   7.   Venue is proper in this County under Section 395 of the Code of Civil Procedure

26   because DEFENDANT maintains its principal place of business in Riverside County, or the

27   contract at issue was entered into and was to be performed in Riverside County, and because

28   DEFENDANT breached its obligations to PLAINTIFF in Riverside County.

COMPLAINT FOR MONETARY DAMAGES                    2

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

8.    KEYNER is a recognized expert in the telecommunications industry with over three decades of experience and extensive relationships with leading telecommunications providers throughout the west coast. Prior to joining UNITED, KEYNER worked for communication companies including Cox, Verizon, Frontier, Spectrum, AT&T, T-Mobile, and Sprint in various capacities, including coordination and management of fiber optics, service delivery, and construction, with a track record of success.

9.    In 2017, KEYNER was introduced to MARTINEZ by a mutual colleague. MARTINEZ immediately recognized KEYNER's industry expertise, contacts, and potential value to UNITED. To that end, MARTINEZ began to solicit KEYNER to leave his position as Service Delivery Manager (SDM) with Charter Communications / Spectrum "Spectrum") to join UNITED.

10.    MARTINEZ's continued to solicit KEYNER to join UNITED beginning in 2017 through 2020.

11.    Throughout 2020, MARTINEZ, who was determined to bring KEYNER to UNITED, offered KEYNER ownership interest in the company. To convince KEYNER to join UNITED, MARTINEZ informed KEYNER that he was working with UNITED's second shareholder, Oscar Cortez, to restructure the ownership interest in UNITED, which will result in KEYNER owning a 45% ownership interest in the company.

12.    In or about October of 2020, MARTINEZ, and Cortez came to an agreement to restructure UNITED and offered KEYNER 45% ownership interest in the company. KEYNER agreed. The parties further agreed that KEYNER's role at UNITED will be strictly limited to business development by spending his time and efforts to procure new contracts with the major telecom companies and MARTINEZ would handle all aspects of operations just as he had been doing up to this point.

13.    KEYNER informed MARTINEZ that he is ready to start with UNITED as soon as his shares are delivered to him. In response, MARTINEZ urged KEYNER to start immediately, assured him that the restructuring of UNITED's ownership will take time, and the shares

representing 45% interest in the company (the "Shares") will be delivered to him with certainty and without conditions.

14.    KEYNER is informed and believes that at the time the parties agreed to KEYNER's 45% ownership interest in United, the company had 1000 shares of common stock issued and outstanding, which would result in 450 shares owned by KEYNER.

15.    In reliance on MARTINEZ' representations and assurances that the Shares will be delivered to him, KEYNER started working for UNITED in November of 2020.

16.    At that time, KEYNER joined UNITED, MARTINEZ told KEYNER that the company did not have sufficient revenues to put KEYNER on payroll with the rest of the officers, and that KEYNER will be paid a salary once the company had sufficient cash flow.

17.    KEYNER quickly got to work on procuring new contracts for UNITED. In December of 2020, KEYNER got UNITED approved as a prime contractor with Charter Communications. At that time, UNITED worked as sub-contactor for Charter's vendors, and had tried for years to procure a position as Charter prime contractor to no avail.

18.    Throughout 2021, KEYNER continued to deliver his end of the bargain by pursuing and obtaining valuable contracts for UNITED and continued to deliver substantial growth and increase in the company's revenues, but KEYNER had not received his Shares in UNITED as promised. By then, MARTINEZ and UNITED were entangled in a legal dispute with Cortez relating to, among other things, the buy-out of Cortez' shares in the company.

19.    Each time KEYNER inquired about the status of his Shares, MARTINEZ would ask KEYNER to be patient and repeatedly assure him with absolute certainty that KEYNER became an owner in UNITED from the time he joined the company, and that his Shares will be delivered to him as soon as the restructuring of the company was completed.

20.    In the meantime, MARTINEZ purportedly continued to negotiate a resolution of the legal dispute with Cortez, by among other things, proposing various changes in UNITED's capitalization structure. Throughout this time, KEYNER continued to work for UNITED and delivered more contracts and substantial increase in revenues, all in reliance of MARTINEZ'

1      repeated assurances that KEYNER was an owner in UNITED and that the company's attorney,

2      Brooke Pollard was in the process of drafting the agreements to deliver KEYNER's Shares.

3          21.      Indeed, KEYNER, consistent with his understanding and MARTINEZ' numerous

4      representations, acted as an owner of UNITED, by among other things, (i) using his personal

5      funds to cover company expenses, (ii) providing the use of his vehicles to UNITED, (iii) offering

6      his personal credit to apply for a loan on behalf of the company, (iv) paying for a corporate

7      partnership out of his own pocket, and (v) working without a pay for a period of five months (from

8      December of 2020 to April of 2021), when the company did not have sufficient cash flow to pay

9      him a salary.

10          22.      In April of 2021, UNITED was generating sufficient cash flow as a result of

11      KEYNER's efforts in procuring new contracts. KEYNER was finally placed on payroll and was

12      given the title of President, along with MARTINEZ as the Chief Executive Officer. MARTINEZ

13      continued to assure KEYNER that his Shares will be delivered, the legal process is slow, and that

14      attorney Brooke Pollard was in process preparing documents to formalize KEYNER's Shares. For

15      his part, KEYNER continued to work and contribute to the company's growth with the passion

16      and dedication of an owner.

17          23.      KEYNER is informed and believes, that in or about August of 2022, UNITED,

18      MARTINEZ and Cortez came to an agreement, whereby Cortez exited from UNITED, and

19      MARTINEZ acquired 100% of the shares of UNITED.

20          24.      On or about August 15, 2022, MARTINEZ informed KEYNER that he was in

21      contract to purchase a building located at 501 Queensland Circle, Corona ("Property"), which will

22      serve as UNITED's headquarters. MARTINEZ further informed KEYNER that the acquisition of

23      the Property would further delay the delivery of the Shares to KEYNER due to the pending SBA

24      loan to purchase the Property, and that KEYNER will be added to the title of the Property

25      immediately after closing.

26          25.      In or about August 22, 2022, KEYNER again asked MARTINEZ about the

27      delivery of his Shares. MARTINEZ once again assured KEYNER that the delay was due to the

28      pending purchase of the Property, attorney, Brooke Pollard, was in the process of drafting the

1  documents, and that KEYNER will be added as shareholder, "retroactive" to the date he started
2  working for UNITED.

3      26.    On or about September 11, 2022, KEYNER received an email from MARTINEZ
4  stating KEYNER is doing great job brining in new business, but blaming KEYNER for numerous
5  problems UNITED was experiencing with operations and servicing contracts. This is the first time
6  MARTINEZ had raised any issues with KEYNER's role at UNITED. KEYNER was nothing less
7  than shocked by MARTINEZ' email and requested that the two meet to discuss the impetus
8  behind the email and the status of KEYNER's Shares.

9      27.    On or about September 19 and 20, 2022, MARTINEZ and KEYNER met in
10 person. KEYNER expressed his shock and disbelief in receiving the September 11, 2022 email
11 faulting him for operations issues, disputed that veracity of the email, reminded MARTINEZ that
12 his role at UNITED was strictly limited to bringing in new business, and questioned MARTINEZ'
13 motive for sending the email. MARTINEZ did not offer any substantive explanation for his email,
14 and instead offered to buy out KEYNER's interest in UNITED for two million dollars. KEYNER
15 did not respond to MARTINEZ' offer, but once again requested that the Shares be delivered to
16 him as promised, at which time, the two could discuss a potential offer to purchase KEYNER's
17 Shares. MARTINEZ agreed.

18     28.    On or about September 26, 2022, KEYNER once again asked MARTINEZ about
19 his Shares, to which MARTINEZ responded that a call is scheduled with attorney Brooke Pollard
20 on September 30, 2022, and that he will get KEYNER the contract so "you can return to work".
21 KEYNER in response informed MARTINEZ he had not left his position at UNITED and that he
22 was actively working on getting a new contract for UNITED with Charter Communications for a
23 construction project in Texas.

24     29.    On or about September 28, 2022, KEYNER once again asked MARTINEZ for an
25 update on his Shares. This time, MARTINEZ responded that the contract for his Shares would
26 take weeks to execute.

27     30.    On October 16, 2023, MARTINEZ sent an email to KEYNER informing him that
28 his position with UNITED was terminated effective immediately due to performance issues and

1    that he will receive a severance package being prepared by UNITED's attorney. MARTINEZ's

2    email terminating KEYNER made no mention of KEYNER's Shares.

3          31.    When KEYNER joined UNITED in 2020, UNITED was a small company working

4    as a subcontractor on construction projects, generating approximately two million dollars in

5    annual revenue, and struggling to meet its operating expenses.

6          32.    KEYNER performed his end of the bargain. During his tenure, KEYNER delivered

7    what MARTINEZ could not accomplish over the course of a decade, i.e., win prime contracts,

8    consistent engineering work with Charter Communications, Frontier Communications, Cox

9    Communications and Race Communications, generating revenues in excess of $40,000,000 for

10    UNITED, thereby increasing UNITED's revenue by 2000%.

11          33.    Despite numerous promises and assurances, MARTINEZ and UNITED failed to

12    deliver the Shares to KEYNER as agreed, and ultimately forced KEYNER out of the company to

13    reap all of the benefit of his work and contributions to the company.

14          34.    KEYNER is informed and believes and thereon alleges, that MARTINEZ or an

15    entity affiliated with MARTINEZ and/or UNITED, acquired the Property on or about November

16    3, 2022, by using funds generated by UNITED during the period KEYNER was working for the

17    company.

18          35.    KEYNER is informed and believes and thereon alleges, that MARTINEZ did not

19    have any intention to make KEYNER a partner in the company and continued to string KEYNER

20    along by making one promise after another that the Shares will be delivered in order for UNITED

21    to reap the benefits of KEYNER's contributions with consideration.

22

23                             **FIRST CAUSE OF ACTION**

24            **(Breach of Oral Contract – Against All Defendants)**

25          36.    PLAINTIFF re-alleges and incorporates by reference each and every allegation of

26    paragraphs 1 through 35, inclusive, as if fully set forth in this cause of action.

27

28

37.     On or about October of 2020, PLAINTIFF AND DEFENDANTS entered into an oral contract, whereby DEFENDANTS agreed to deliver the Shares to PLAINTIFF in consideration for PLAINTIFF's services to UNITED.

38.     PLAINTIFF has performed each of his obligations as required under the Contract, except for those obligations excused as a result of DEFENDANTS' actions and omissions.

39.     DEFENDANTS breached the Contract, by failing to deliver the Shares to Plaintiff as agreed.

40.     As a proximate result of DEFENDANT'S breach of the Contract as herein alleged, PLAINTIFF has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

## SECOND CAUSE OF ACTION

### (Breach of Implied Contract – Against All Defendants)

41.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 40, inclusive, as if fully set forth in this cause of action.

42.     Pursuant to California Civil Code Section 1619 et sec., a contract may be implied by the conduct of the parties.

43.     As alleged herein, DEFENDANTS promised to deliver the Shares to PLAINTIFF in consideration for PLAINTIFF's services to UNITED and PLAINTIFF faithfully provided his services to UNITED as agreed.

44.     PLAINTIFF AND DEFENDANTS intended the Contract be formed and acted as though the Contract had been formed.

45.     DEFENDANTS have failed and refused to deliver the Shares to PLAINTFF.

46.     As a proximate result of DEFENDANTS' breach of the Contract as herein alleged, PLAINTIFF has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

## THIRD CAUSE OF ACTION

### (Breach of Covenant of Good Faith & Fair Dealing – Against All Defendants)

47. PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 46, inclusive, as if fully set forth in this cause of action.

48. The Contract contained an implied covenant of good faith and fair dealing by which DEFENDANTS promised to deliver the Shares to PLAINTIFF, give full cooperation to PLAINTIFF and his performance of services under the Contract, and to refrain from doing any act that would prevent or impede PLAINTIFF from obtaining the Shares, or PLAINTIFF's enjoyment of the fruits of the Contract. Specifically, said covenant of good faith and fair dealing required DEFENDANTS to fairly, honestly and reasonably perform the terms of the Agreement.

49. DEFEDANTS breached the implied covenant of good faith and fair dealing by, among other things, failing to deliver the Shares to PLAINTIFF, and by wrongfully terminating his employment with UNITED, thereby depriving PLAINTIFF from the promised Shares and benefit of the Contact.

50. As a proximate result of DEFENDANTS' breach of the implied covenant of good faith and fair dealing as herein alleged, PLAINTIFF has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment – Against All Defendants)

51. PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 50, inclusive, as if fully set forth in this cause of action.

52. DEFENDANTS failed and refused to deliver the Shares to PLAINTIFF, despite having incurred substantial benefits of PLAINTIFF's services, including without limitation, acquisition of contracts with customers that DEFENDANTS would not otherwise by able procure and substantial increase in revenues and economic benefits, which DEFENDANTS would not have realized but for PLAINTIFF's efforts.

53. Although demanded by PLAINTIFF, DEFENDANTS have refused and failed to deliver the Shares to PLAINTIFF as promised.

54.     DEFENDANTS have knowingly and intentionally benefited from their failure to deliver the Shares to PLAINTIFF, all as alleged above. PLAINTIFF had a reasonable expectation that DEFENDANTS will deliver his Shares as promised.

55.     Because DEFENDANTS have been unjustly enriched at PLAINTIFF's expense, DEFENDANTS are accountable to PLAINTIFF and must make restitution to PLAINTIFF for the total amount that DEFENDANTS unjustly received and/or the total loss PLAINTIFF has suffered, in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

### FIFTH CAUSE OF ACTION

### (Promissory Estoppel – Against All Defendants)

56.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 55, inclusive, as if fully set forth in this cause of action.

57.     In or about October of 2020, DEFENDANTS promised and assured PLAINTIFF that DEFENDANTS will deliver the Share to him.

58.     In so doing, DEFENDANTS knew or should have known that PLAINTIFF would be reasonably induced to rely on DEFENDANTS' promise to continue to join UNITED and provide services to DEFENDANTS and forgo other business and employment opportunities.

59.     PLAINTIFF reasonably relied on DEFENDANTS' promise and was induced to join UNITED and continue to provide services to DEFENDANTS and forgo other business and employment opportunities.

60.     DEFENDANTS have not performed their promise to deliver the Shares to PLAINTIFF.

61.     As a proximate result of DEFENDANTS' failure to perform according to their promises, PLAINTIFF has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

### SIXTH CAUSE OF ACTION

### (Fraud – Against All Defendants)

62.    PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 61, inclusive, as if fully set forth in this cause of action.

63.    DEFENDANTS represented to PLAINTIFF that PLAINTIFF was entitled to the Shares, and that DEFENDANT will in fact deliver the Shares to PLAINTIFF.

64.    These representations were false, however, in that DEFENDANTS had no intention of delivering the Shares to PLAINTIFF.

65.    At the time they made these representations, DEFENDANTS knew that the representations were false and/or made the representations recklessly and without regard for its truth.

66.    DEFENDANTS intended PLAINTIFF to rely on the representations and, in fact, PLAINTIFF reasonably relied on DEFENDANTS' representations by agreeing to join UNITED and in providing services to DEFENDANTS.

67.    As a proximate result of DEFENDANTS' representations relating to the deliver of Shares to PLAINTIFF, PLAINTIFF has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this court.

### SEVENTH CAUSE OF ACTION

#### (Negligent Misrepresentation)

68.    PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 67, inclusive, as if fully set forth in this cause of action.

69.    DEFENDANTS represented to PLAINTIFF that they will deliver the Shares to PLAINTIFF.

70.    This representation was false, however, in that DEFENDANTS had no intention of delivering the Shares to PLAINTIFF.

71.    At the time they made this representation, DEFENDANTS knew that the representation was false and/or made the representation recklessly and without regard for its truth.

72.    At the time it made this representation, DEFENDANTS had no reasonable grounds for believing the representation was true.

73.    DEFENDANT intended PLAINTIFF to rely on the representation and, in fact, PLAINTIFF reasonably relied on DEFENDANT's representation in continuing to provide services to DEFENDANTS.

74.    As a proximate result of DEFENDANTS' representation relating to the deliver of Shares to PLAINTIFF, PLAINTIFF has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this court.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment as set forth below:

A.    For general and specific damages according to proof at time of trial;

B.    For interest as provided by law;

C.    For reasonable attorneys' fees in an amount according to proof at time of trial;

D.    For costs of suit incurred herein; and

E.    For such other and further relief as the Court may deem just and proper.

F.    For punitive damages in such amount as the Court or jury may award;

DATED: March 24, 2023                          NAMI LAW FIRM, P.C.

By _____
Nima Nami Attorney for Plaintiff

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Robert P. Goe - State Bar No. 137019<br>Charity J. Manee – State Bar No. 286481<br>GOE FORSYTHE & HODGES LLP<br>17701 Cowan, Suite 210, Building D<br>Irvine, CA 92614<br>rgoe@goeforlaw.com<br>cmanee@goeforlaw.com<br><br>Telephone: (949) 798-2460<br>Facsimile: (949) 955-9437<br><br>*Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br>UNITED FIBER COMM., INC.,<br><br><br><br><br>Debtor(s). | CASE NO.: 6:24-bk-16470-SY<br><br>CHAPTER: 11<br><br>ADVERSARY NO.: |
|---|---|
| UNITED FIBER COMM., INC,<br><br><br><br>Plaintiff(s)<br>Versus<br>RICHARD KEYNER, an individual, and DOES 1 - 10<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____ | Address: |
|---|---|
| Time: _____ | ☐ 255 East Temple Street, Los Angeles, CA 90012 |
| Courtroom: _____ | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
| | ☐ 411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐ 1415 State Street, Santa Barbara, CA 93101 |
| | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

                                                **KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
              Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                              Page 2                              **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.